NO. 07-05-0382-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 5, 2006
_____

IN THE INTEREST OF C.G.B., T.L.B. AND M.B.,

Minor Children
_____

FROM THE 100TH DISTRICT COURT OF CHILDRESS COUNTY;

NO. 8855; HON. DAVID MCCOY, PRESIDING
_____

***Memorandum Opinion***
_____

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

Christine Hoover (Hoover) appeals from an order terminating the parental relationship between her and her children, C.G.B., T.L.B. and M.B. Her two issues attack the trial court's finding that termination was in the best interests of the child; she does not question whether the evidence satisfied one of the statutory grounds alleged as warranting termination. We affirm that judgment.

***Standard of Review***

The applicable standard of review is explained in *In re C.H.*, 89 S.W. 3d 17 (Tex. 2002). We refer the parties to that opinion for a discussion of the standard.

Next, indicia such as those that have become known as the *Holley* factors are helpful in testing a determination that termination of the parent/child relationship is in a child's best interest. *See Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976) (discussing the indicia). They encompass 1) the desires of the child, 2) the emotional and physical needs of the child now and in the future, 3) the emotional and physical danger to the child now and in the future, 4) the parental abilities of those seeking custody, 5) the programs available to assist those seeking custody to become effective parents, 6) the plans for the child by these individuals or by the agency seeking custody, 7) the stability of the home or proposed placement, 8) the acts or omissions of the parent which may indicate that the existing parent/child relationship is not a proper one, and 9) any excuse for the acts or omissions of the parent. *Id*. at 372. And, while helpful, those factors are not the sole ones subject to consideration. *In re C.H.*, 89 S.W.3d at 27. Other matter is also worthy of note, such as the evidence used to prove one or more statutory grounds for termination. *Id*. at 28. Nor can it be forgotten that one need not prove that each *Holley* factor supports termination. *Id*. Rather, there need be only enough evidence upon which the factfinder can reasonably form a firm conviction or belief that the child's best interest warranted termination.

Here, the evidence before us showed that 1) Hoover had been referred to Child Protective Services (CPS) for "medical neglect and physical abuse" on C.G.B. in September 1998, 2) C.G.B. was a few months old and needed to be on an apnea monitor which Hoover failed to do, 3) in 2002, C.G.B. and T.L.B. were removed from the home due to a criminal investigation into the death (by suffocation) of another of Hoover's children,

2

4) Hoover is the subject in an ongoing criminal investigation into the child's death and according to one witness is the person who "murdered" the child, 5) C.G.B. was three or four years old at the time of the sibling's death while T.L.B. was two, 6) the various houses wherein the children had lived were deplorable and smeared with human feces, 7) Hoover stated that this had been an ongoing problem and the reason the feces were on the walls was because she had a hard time getting it off, 8) Hoover had to move several times due to eviction notices and the deplorable conditions of the home, including human feces on the wall, no linens on the children's beds and trash running over in all the rooms, 9) Hoover was unable to maintain employment, 10) there were attachment issues between Hoover and the children (*i.e.* they had not bonded), 11) Hoover had continuing problems with depression, 12) the children suffered from ringworms, 13) Hoover was diagnosed with self-defeating and depressive personality traits, 14) Hoover's mental traits impaired her parenting ability and her prognosis for improvement was poor, 15) she, furthermore, had a dependent personality which prevented her from being able to parent children, 16) out of the 11 opportunities to visit with M.B., her infant child, Hoover was late for five appointments and was a "no-show" for six, 17) Hoover, according to her therapist, is a pathological liar, 18) she continued to stay in an abusive relationship with Lloyd Hoover (her husband and father of the deceased child) off and on which included the period wherein she became pregnant with M.B., 19) she depended upon the financial support of family, 20) Hoover either failed to comply with the CPS service plan developed to get her children back or marginally completed the assigned tasks, and 21) she could not financially support her children or provide them a safe and stable environment.

3

Other evidence illustrated that C.G.B. and T.L.B. 1) were diagnosed with behavioral problems when first placed with their foster parents, 2) these behaviors included nightmares, eating disorders, fighting, aggression and smearing feces on walls, 3) M.B. had never lived with Hoover because of the ongoing criminal investigation into the death of Hoover's third child, 3) C.G.B. and T.L.B. were in need of constant supervision, 4) both would "run off in parking lots," . . . "were cruel to animals in the home," "avoided being parented," and "usually responded quite angrily at having consequences," and 5) since being removed from Hoover, the children were exhibiting about half of the problems they originally presented.

In comparing the foregoing litany of evidence against the *Holley* factors, one could reasonably form a firm conviction or belief that Hoover lacked the parental ability, skills and desire as well as the financial ability to raise offspring, that though programs were available to assist her in improving her personal and parenting skills she did not or could not benefit from them, that Hoover could not provide a stable home environment for all three children, and that Hoover's acts or omissions indicated that the existing parent/child relationship was not a proper one. In short, the evidence entitled a factfinder to reasonably form a firm conviction or belief that it was in the best interest of *each child* to terminate the parent/child relationship.

Having found that the evidence both legally and factually supports the decision that termination would be in the children's best interests, we affirm the judgment of the trial court.


Brian Quinn
Chief Justice

4